IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC HALL, : | |
|     Plaintiff : | |
| : | CIVIL NO. 3:08-CV-1895 |
|     v. : | |
| : | (Judge Caldwell) |
| ROBERT SHANNON, *et al.*, : | |
|     Defendants : | |

*M E M O R A N D U M*

I.  *Introduction and Procedural History*

We are considering the defendants' motion for summary judgment. The pro se plaintiff, Eric Hall, an inmate at SCI-Somerset, Somerset, Pennsylvania, filed this 42 U.S.C. § 1983 civil-rights action for events that occurred while he was incarcerated at SCI-Frackville, Frackville, Pennsylvania.

In his amended complaint, he asserted a First Amendment free-exercise claim, an Eighth Amendment conditions-of-confinement claim, and a RLUIPA claim,[1] all arising from the denial of a dinner meal for five days at the end of Ramadan; an Eighth Amendment excessive-force claim arising from an altercation when Plaintiff put his arms through his cell door's food slot; a Fourteenth Amendment procedural due-process claim arising from the disciplinary hearing held to determine if Plaintiff had violated prison rules during the food-slot incident; and a malicious prosecution claim arising from the criminal

---

[1] The Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C.A. §§ 2000cc to 2000cc-5 (West 2003).

charges brought as a result of the food-slot incident.  Plaintiff also made a state-law claim for assault and battery based on the food-slot incident.

He named as defendants the following Department of Corrections (DOC) employees: Superintendent Shannon; Deputy Superintendent Varano; Deputy Superintendent Wenerowicz; Corrections Classification and Program Manager, Brenda Tritt; Deputy Chief Counsel for Hearing and Appeals, Timothy Mark; Hearing Examiner Kevin Kane; Major of the Guard, Joseph Miller; Intelligence Captain, David Kneal; Captain Barnes; Lieutenant William Shade; Sergeant Nickey George Jepson; Corrections Officer (CO) Joseph Hughes; CO Mitchell Sarkowski; CO Jason Albert; and Nurse Tracey Lynn Frantz.

The defendants filed a motion to dismiss.  In ruling on the motion we: (1) dismissed defendants Barnes and Shade from the action because the claims against them were barred by the statute of limitations; (2) dismissed defendant Bitner from the action because Plaintiff failed to state a claim against him; and (3) dismissed the malicious prosecution claim.

We also decided the following claims survived the motion to dismiss: (1) the Eighth Amendment excessive-force claim against CO Hughes, CO Sarkowski, Sgt. Jepson and Lt. Kneal; (2) the First Amendment free-exercise claim and (3) the Eighth Amendment conditions-of-confinement claim against Supt. Shannon, Deputy Supt. Varano, Major Miller, CO Albert and CO Sarkowski arising from the denial of food;[2] and

---

[2] As noted, this is also the subject of the RLUIPA claim.

(4) the due process claim against Kane, the hearing officer. The state-law claim for assault and battery against Hughes, Jepson, Sarkowski and Kneal also remains in the case as it was not addressed in the motion.

II. *Standard of Review*

Under Fed. R. Civ. P. 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In pertinent part, parties moving for, or opposing, summary judgment must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In deciding a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "'The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Meditz v. City of Newark,* 658 F.3d 364, 369 (3d Cir. 2011)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

III.   *Discussion*

    A.  *Plaintiff has Failed to Exhaust His Administrative Remedies on the First Amendment Claim, the Eighth Amendment Claim, and the RLUIPA Claim*

Plaintiff has made a First Amendment free-exercise claim, an Eighth Amendment conditions-of-confinement claim, and a RLUIPA claim arising from the denial of a dinner meal for five days during Ramadan.  Defendants argue that Plaintiff cannot pursue these claims because he failed to exhaust his administrative remedies as required by 42 U.S.C.A. § 1997e(a)(West 2003).

Plaintiff's evidence in support of this claim and in favor of exhaustion is as follows.[3]  In October 2006, Plaintiff was observing the religious fast for the Muslim holy month of Ramadan.  The fast prohibits food during daylight hours.  On October 18, 2006, at around 7:00 p.m., defendant Sarkowski was distributing the Ramadan dinner trays in the restricted housing unit (RHU) where Plaintiff was confined.  (Doc. 34, Am. Compl. ¶¶ 18 and 24).[4]  Plaintiff was standing in his cell with his lights on waiting for his meal, but Sarkowski passed him by, refusing to deliver the meal.  Even though Plaintiff stood at the ready with his lights on, this happened for the next four days, with defendant Albert refusing to deliver the meal when he was on duty.  (Pl.'s penalty-of-perjury Decl. ¶ 26).

---

[3]   We take some details from Plaintiff's amended complaint to provide a fuller background.  We recognize that on a motion for summary judgment a plaintiff must go beyond his pleadings, *see Romero v. SmithKline Beecham*, 309 F.3d 113, 119 (3d Cir. 2002), but the details taken from the complaint are not dispositive.

[4]   In addition to a dinner, the tray included a Sahorah breakfast bag.  (Doc. 34, ¶ 63; Doc. 136, Pl.'s penalty-of-perjury Decl. ¶ 26).

4

As a result, Plaintiff was without food for five days until October 23, 2006, when he was forced to break his fast by having his name removed from the Ramadan list so that he could receive breakfast from the morning staff in the RHU.  (Doc. 34, Am. Compl. ¶ 67).

DC-ADM 804, the "Inmate Grievance System Policy," is a three-stage administrative remedy process designed to address inmate problems that may arise during the course of confinement.[5]  Before the process begins, the inmate is first encouraged to resolve the problem informally with the staff, the unit manager or officer in charge.  If that fails, the process starts with the filing of a written grievance for initial review with the Facility Grievance Coordinator.  The inmate can follow that with an appeal to the Facility Manager (in Plaintiff's case Frackville's superintendent), and then finally with an appeal to the DOC Secretary's Office of Inmate Grievances and Appeals.

An inmate must submit a grievance for initial review "within fifteen working days after the event upon which the claim is based."  (Doc. 135-1, CM/ECF p. 5, DC-ADM 804, § VI.A, ¶ 8).  The grievance must be filed "at the facility where the grievance occurred." (*Id.*, DC-ADM 804, § VI.A, ¶ 9). An extension of time for filing the grievance may be made if "the delay in filing was caused by":

    a.  a temporary transfer from the facility where the grievance should have been filed;

    b.  a permanent transfer to another facility from the facility where the grievance should have been filed;

---

[5]  DC-ADM 804 has been revised since the incidents giving rise to Plaintiff's action. We rely on the copy submitted by Plaintiff, effective January 3, 2005.  (Doc. 135-1, CM/ECF pp. 1-15).  The new DC-ADM 804, effective December 8, 2010, is not materially different.  *See* www.cor.state.pa.us.

    c. Authorized Temporary Absence (ATA) for an extended period; or

    d. other delays with mail delivery.

(*Id.*, CM/ECF p. 6, DC-ADM 804, § VI.B, ¶ 3).  "When the Facility Grievance Coordinator determines that the delay was caused by one of [these] circumstances . . . a reasonable extension of time for filing may be permitted." (*Id.*, CM/ECF p. 6, DC-ADM 804, § VI.B, ¶ 4).

   On November 1, 2006, Plaintiff was temporarily transferred to SCI-Waymart for a psychiatric evaluation.  (Doc. 136, Pl.'s penalty-of-perjury Decl. ¶ 4, CM/ECF p. 2).  Plaintiff asserts that this was before he could gather the facts and submit a timely administrative grievance concerning the denial of Ramadan meals.  (*Id.*).  Plaintiff was aware of the exceptions in DC-ADM 804 allowing an extension of time to file a grievance.  According to his interpretation, an extension would be allowed when the inmate was temporarily transferred from the facility in which the grievance occurred.  (*Id.* ¶ 7, CM/ECF p. 3).  Plaintiff thus decided to file his grievance when he returned to Frackville, "where he had the correct spelling of the names of the officers involved in" the denial of his meals, the correct dates and times and the names of witnesses.  (*Id.* ¶ 8. CM/ECF p. 3).

   On December 21, 2006, Plaintiff returned to Frackville.  (*Id.* ¶ 9, CM/ECF p. 3). On December 25, 2006, noting his recent stay at Waymart, he submitted a request slip to defendant Shannon, asking permission to pursue untimely "grievance issues." Shannon denied permission, writing: "No.  Time deadlines remain in effect as long as

you remain incarcerated within the DOC.  Time is suspended only -- for instance -- if you were to go ATA to County authorities." (Doc. 135-1, CM/ECF p. 20).  Plaintiff filed a grievance anyway in an attempt to exhaust his administrative remedies, but without success.  (Doc. 136, Pl.'s Decl. ¶¶ 11 and 13, CM/ECF p. 4).  In his final appeal to the Office of Inmate Grievances and Appeals, the Office agreed with Shannon's determination that his grievance was untimely, reasoning that:

> [t]he incident occurred on October 18-22, 2006, and you did not file your grievance until December 18, 2006.  Although you were transferred to SCI-Waymart on November 1, 2006, you had the opportunity to send your grievance back to SCI-Frackville.  You must submit a grievance for initial review to the Facility Grievance Coordinator within 15 working days after the event upon which the claim is based.

(Doc. 135-1, CM/ECF p. 26).

Section 1997e(a) prohibits a prisoner from filing a lawsuit under section 1983 "or any other Federal law" concerning prison conditions until he has exhausted his "available" administrative remedies.  42 U.S.C.A. § 1997e(a).  Exhaustion must be "proper," meaning the inmate must comply with all the procedural steps the state requires, including deadlines.  *Woodford v. Ngo*, 548 U.S. 81, 90-91, 93, 126 S.Ct. 2378, 2385-86, 2387, 165 L.Ed.2d 368 (2006).  Thus, an untimely filed grievance does not satisfy the exhaustion requirement.  *Payne v. Pitkins*, 447 F. App'x 291, 292 (3d Cir. 2011)(nonprecedential).  Compliance with state procedural rules dealing with inmate grievances is an issue of state law, not federal law.  *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004).

7

Defendants move for summary judgment based on failure to exhaust because they say Plaintiff did not file an appeal to final review and hence did not properly exhaust administrative remedies. They rely on a DOC administrative officer's affidavit asserting that the Office of Inmate Grievances and Appeals has no record of any appeals filed in that office by Plaintiff dealing with the denial of his Ramadan dinner meals. (Doc. 121, Moore Aff., CM/ECF pp. 125-27).

We cannot rely on this argument because Plaintiff has provided evidence, as shown above, that he did grieve the denial-of-food claim, including presenting it on final appeal. Nonetheless, even if we consider Plaintiff's evidence, we must dismiss the constitutional and RLUIPA claims because Plaintiff failed to file a timely grievance on initial review and hence failed to properly exhaust administrative remedies. At the latest, Plaintiff had to file the initial grievance within fifteen working days of October 22, 2006, but did not file until December 18, 2006, at the earliest.

Plaintiff makes three arguments why section 1997e(a) does not bar his claims. First, Defendants waived the exhaustion defense by not raising it in their motion to dismiss. Plaintiff cites no authority for this position and we reject it. In fact, raising exhaustion at the motion-to-dismiss stage is the exception, only proper if exhaustion appears on the face of the complaint. *See Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002). Exhaustion is an affirmative defense, *id.* at 295, and most of the time the nature

of the defense requires the defendant to provide evidence, which means Defendants here acted properly in arguing the defense on summary judgment.[6]

Second, Plaintiff argues the fifteen-day deadline for filing the grievance should have been tolled while Plaintiff was temporarily at Waymart undergoing his psychiatric evaluation, or at least extended while he was at Waymart, but when defendant Shannon denied Plaintiff's request for an extension, he made the grievance procedure unavailable. We reject this argument. In part, it appears to be a request that we add a provision to the grievance procedure automatically tolling the fifteen-day time period while an inmate is temporarily in another institution. As noted above, however, state procedural rules dealing with inmate grievances are a matter of state law, not federal law, so we cannot add our own requirements to the state rules. Plaintiff cites *Brown v. Croak*, 312 F.3d 109 (3d Cir. 2002), in support of the claim that Shannon's conduct made the procedure unavailable. However, *Brown* is distinguishable. In that case, the inmate plaintiff failed to complete the grievance process because he had allegedly been told that he had to wait until a prison investigation was completed before he could file a grievance. The Third Circuit concluded that such a misrepresentation could have made the grievance process unavailable. *Id.* at 112. Here, Shannon made no misrepresentations to Plaintiff; he merely decided to deny Plaintiff's request for an extension of time to file a grievance.

---

[6] They also raised in their answer. (Doc. 63, CM/ECF p. 18).

Third, Plaintiff argues that prison and DOC officials wrongly denied him an extension because under DC-ADM 804 he was entitled to one while he was temporarily at Waymart. We cannot conclude that prison officials wrongly interpreted the extension provisions of DC-ADM 804. Plaintiff believes that the policy entitles him to an extension merely because he was temporarily transferred out of Frackville. However, DC-ADM 804 contemplates an extension if the Facility Grievance Coordinator decides that the delay in filing the grievance "was caused by" the transfer. As noted at the third stage of review, Plaintiff presented no reasons why the transfer caused the delay or why he could not have filed his grievance while he was at Waymart.

On the basis of Plaintiff's failure to properly exhaust, we will enter summary judgment in favor of defendants Supt. Shannon, Deputy Supt. Varano, Major Miller, CO Albert and CO Sarkowski on the First Amendment free-exercise claim, the Eighth Amendment conditions-of-confinement claim and the RLUIPA claim arising from the denial of food.[7]

B. *Plaintiff's Eighth Amendment Excessive-Force Claim Must Be Tried*

Defendants move for summary judgment on Plaintiff's Eighth Amendment excessive-force claim arising from the food-slot incident, arguing that the force used was

---

[7] Since Plaintiff cannot pursue a RLUIPA claim, we have no need to address the issue, but we note that the Third Circuit recently decided that RLUIPA does not authorize the imposition of direct liability on government officials in their individual capacities. *Sharp v. Johnson*, 669 F.3d 144, 154-55 (3d Cir. 2012). The Supreme Court has also decided that states are immune from a RLUIPA claim for damages. *Sossamon v. Texas*, ___ U.S. ___, ___, 131 S.Ct. 1651, 1663, 179 L.Ed.2d 700 (2011).

necessary to restore order by compelling Plaintiff to withdraw his arms from the "wicket," the food slot, the small door within the cell door that also acted like a tray when it was down.

"The core inquiry on an excessive-force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *In re Bayside Prison Litig.*, 419 F. App'x 301, 304 (3d Cir. 2011) (nonprecedential)(quoting *Wilkins v. Gaddy*, ___ U.S. ___, ___, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010)). "In order to determine whether a correctional officer has used excessive force, we examine: '(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000)).

In evaluating Defendants' argument, we must rely on Plaintiff's evidence in support of his excessive-force claim. That evidence is as follows. Shortly after defendant Sarkoski had refused to give Plaintiff his Ramadan dinner meal on the evening of October 18, 2006, defendant Hughes was accompanying Nurse Frantz as she distributed medication in the RHU.[8] After the nurse gave Plaintiff his medications, he put

---

[8] According to the penalty-of-perjury declaration of Hughes, Plaintiff did not in fact receive his Ramadan meal that night, but only because he violated prison rules by not standing in his cell with his lights on as the meals were being distributed, an assertion Plaintiff

11

his arms partially out of the wicket.  Plaintiff knew this violated prison rules, but he only did so as a way of getting defendant Jepson to come to his cell, at which time Plaintiff would seek his assistance in getting his dinner meal.  Plaintiff did not say anything to the nurse nor did he attempt to grab her.  At that point, Hughes closed the wicket on Plaintiff's arms, pressing hard against the wicket with his body.  According to a recorded video of the incident (Doc. 123), it appears that Hughes held the wicket against Plaintiff's arms for about one minute.[9]  During this time, Plaintiff could not withdraw his arms and was suffering a great deal of pain.

Jepson and Sarkowski arrived.  Hughes grabbed his right arm and Jepson twisted his left arm.  A baton struck Plaintiff once on the back of his left arm, causing pain, and he then drew his arms back into the cell. (Doc. 121, Pl.'s Dep., CM/ECF pp. 24-33).[10]  Hughes did not warn him before he closed the wicket nor did Jepson or Sarkowski order him to withdraw his arms when they appeared at the cell. (*Id.*, p. 35). Plaintiff suffered abrasions on his arms; X-rays showed no broken bones in either arm. (Doc. 121, CM/ECF pp. 166-172).

We believe this evidence is sufficient to take the excessive-force claim to the fact finder.  *See Nelson v. Sharp*, ___ F. App'x ___, ___, 1999 WL 520751, at *2 (6th

---

disputes.

[9]   At his deposition, Plaintiff testified that Hughes first  kicked the wicket closed on Plaintiff's arms, but the video only shows Hughes pressing his body against the wicket.

[10]   According to Defendants, Sarkowski used the baton.

Cir. 1999)(nonprecedential)(slamming a food-slot door against an inmate's hand and then maintaining pressure may state an excessive-force claim).

We recognize Defendants' contrary position and the evidence upon which it is based. Defendants argue the force used was appropriate because Plaintiff thrust his arms out of the wicket in an attempt to grab the nurse, and that Hughes only "held" Plaintiff's arms in the wicket, all the while ordering Plaintiff to pull his arms back into the cell. Additionally, only one baton strike was used to cause him to withdraw his arms, after Jepson and Sarkowski arrived and he again refused orders to pull his arms back. Further, the incident lasted only a minute, and Plaintiff suffered only abrasions. Defendants additionally argue that the video shows that no excessive force was used.

Nonetheless, because we are dealing with a motion for summary judgment, which means we must accept Plaintiff's version of the incident, the claim must proceed. We note that the video does not seem to establish the propriety of the force. It seems to establish only the basic facts of the incident, upon which both sides could agree. We also note that while Plaintiff only suffered abrasions, the extent of the injury is only one factor, among others, to be considered, as *In re Bayside Prison Litig.* shows. The minor nature of the injuries might affect Plaintiff's damages, but does not defeat the cause of action.

We will therefore deny summary judgment on the excessive-force claim. This claim will proceed against defendants against CO Hughes, CO Sarkowski, Sgt. Jepson and Lt. Kneal.[11]

C. *Plaintiff Has No Due Process Claim Against Hearing Officer Kane Because He Had No Liberty Interest in Not Being in Restricted Housing*

Defendants move for summary judgment on the procedural due process claim against defendant Kane, the hearing examiner who decided that Plaintiff should spend 180 days in disciplinary custody for assault and sixty days in disciplinary custody for refusing to obey an order. Both charges arose from the food-slot incident. Plaintiff's claim is that Kane violated due precess by requiring him to read at the hearing his written version of the events rather than simply allow him to submit it for consideration, refusing to allow him to call his witnesses, and removing Plaintiff from the hearing.

To assert a right to procedural due process, Plaintiff must have a liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). In Plaintiff's situation, he must show he had a "liberty interest in remaining free of disciplinary custody." *Mitchell v. Horn*, 318 F.3d 523, 531 (3d Cir. 2003). If he had no such interest, no process was owed him. *Id.* This kind of liberty interest is not shown unless Plaintiff establishes that his placement in restricted housing imposed an "'atypical and significant hardship'" on him "'in relation to

---

[11] Lt. Kneal is alleged to have observed the use of excessive force without intervening, (Doc. 34, Am. Compl. ¶ 38), a basis of liability. *See Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). The defendants did not address the merits of the claim against Kneal in their summary judgment motion.

14

the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)).

"[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002)(quoting *Sandin*). To determine if Plaintiff's placement was atypical, we consider "the following two factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement." *Shoats*, 213 F.3d at 144. It is a fact-intensive inquiry. *Pressley v. Blaine*, 352 F. App'x 701, 706 (3d Cir. 2009)(nonprecedential).

In moving for summary judgment, Defendants point out that Plaintiff's total confinement to restricted housing was 240 days and that prior cases have found no liberty interest even for time exceeding this total. *See*, *e.g.*, *Smith*, *supra*, 293 F.3d at 654 (liberty interest not implicated by seven months in disciplinary confinement); *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997)(fifteen-months administrative custody was not an atypical and significant hardship).

In opposing summary judgment, Plaintiff argues that the conditions of his confinement were atypical. First, he argues that the amount of time he was in restricted housing, 1,348 days, was excessive, (Doc. 136, Pl.'s Decl. ¶ 40, CM/ECF p. 12) if one includes the disciplinary time he has incurred as a result of numerous other disciplinary

15

charges, which Plaintiff claims are also false. We reject this argument because Plaintiff's claim is not based on numerous other charges[12] but on the two charges arising from the food-slot incident. As *Smith* and *Griffin* above show, the total length of Plaintiff's confinement on those two charges, 240 days, does not raise due process concerns. *See also Crosby v. Piazza*, ___ F. App'x ___, ___, 2012 WL 641938, at *2 (3d Cir. 2012)(270-days disciplinary confinement was not an atypical and significant hardship).

Plaintiff next argues that the conditions of his confinement were atypical: (1) confinement to his cell for days at a time without an opportunity for outside activities; (2) outdoor exercise frequently cancelled because of minor weather conditions or for construction work, forcing Plaintiff "to spend days (a week or so) confined to [his] cell" (Doc. 136, ¶ 42, CM/ECF p. 13); an inability to engage in activities enjoyed by the general prison population, going to the gymnasium, day-room activities, and greater access to the law library.

None of these complaints made Plaintiff's confinement an atypical and significant hardship. The comparison is not to the general prison population but to other inmates in restricted housing. *See Griffin*, *supra*, 112 F.3d at 706 and n.2 ("the baseline" for what is atypical and significant is the ordinary incidents of prison life, which includes the possibility of being disciplined by prison officials).[13] Additionally, it is not unusual for

---

[12] That is the basis of another lawsuit. *Hall v. Piazza*, No. 10-1738 (M.D. Pa.).

[13] Part of Plaintiff's complaint about law-library access is that he missed the filing deadline for his 28 U.S.C. § 2254 petition. We rejected that claim in *Hall v. Piazza*, No. 10-1738 (M.D. Pa. Sept. 22, 2011)(Caldwell, J.).

inmates in restricted housing not to be able to engage in activities outside their cell. Finally, Plaintiff did have outside exercise about once a week, insufficient by itself to make his conditions of confinement atypical.  *See Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010)(nonprecedential)(observing that forty-five minutes of exercise per week was not unconstitutional).

We will therefore grant defendant Kane summary judgment on the due-process claim against him because Plaintiff has failed to show a liberty interest.

IV.   *Conclusion*

Our resolution of Defendants' summary judgment motion leaves for trial only the Eighth Amendment excessive-force claim and state-law claim for assault and battery, both claims against CO Hughes, CO Sarkowski, Sgt. Jepson and Lt. Kneal.  We will issue an appropriate order.

                                              /s/ William W. Caldwell
                                              William W. Caldwell
                                              United States District Judge

Date: April 5, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ERIC HALL,                                :
    Plaintiff                         :
                                      : CIVIL NO. 3:08-CV-1895
   v.                                 :
                                      : (Judge Caldwell)
ROBERT SHANNON, *et al.*,                 :
    Defendants                        :

*O R D E R*

AND NOW, this 5th day of April, 2012, upon consideration of Defendants' motion (Doc. 118) for summary judgment, it is ordered that the motion is granted as follows:

    1. The Clerk of Court shall enter judgment in favor of defendants Supt. Shannon, Deputy Supt. Varano, Major Miller, CO Albert and CO Sarkowski on the First Amendment free-exercise claim, Eighth Amendment conditions-of-confinement claim, and RLUIPA claim.

    2. The Clerk of Court shall enter judgment in favor of defendant Kane and against Plaintiff on the procedural due process claim.

    3. In all other respects, the motion denied.

    4. An order scheduling the case for trial will follow.

                                /s/ William W. Caldwell
                                William W. Caldwell
                                United States District Judge